# EXHIBIT 12

RICK THALER (7002)
DAVID DIBBLE (10222)
**RAY QUINNEY & NEBEKER P.C.**
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah 84145-0385
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
E-mail: rthaler@rqn.com
      ddibble@rqn.com

*Attorneys for Respondent*

BEFORE THE UTAH LABOR COMMISSION
ADJUDICATION DIVISION

| | |
|---|---|
| ANGELA MOLENI,<br><br>    Petitioner,<br><br>vs.<br><br>DELTA AIR LINES, INC.<br><br>    Respondent. | **DECLARATION OF KELLEY NABORS**<br><br>Civil No. 880189<br><br>Judge Jennie Jonsson |

1. I am over the age of twenty-one years old and competent to testify regarding the facts set forth herein, which are based on my personal knowledge.

2. I am currently employed by Delta Air Lines, Inc. ("Delta" or the "Company") as a Senior HR Manager for Airport Customer Services ("ACS").

3. I previously worked for Delta for 14 years, until I left the Company in July 2009. At the time I left, I was the Program Manager – Equal Opportunity and Compliance in Delta's Equal Opportunity Department.

4. I returned to Delta in November 2009 to work as a contractor, and I was later rehired to my former position in February 2011.

5. In July 2016, I became a Senior HR Manager, and I have worked in that capacity ever since.

6. As a Senior HR Manager, I am familiar with Delta's personnel policies, and my responsibilities include providing HR counsel to ACS on a variety of employee and business needs. In addition, I conduct and/or participate in the investigation and resolution of employee Helpline complaints.

7. In my assignment to work with ACS, I became acquainted with Angela Moleni, who worked as a part-time Customer Service Agent.

8. On October 12, 2017, ACS management started the termination process by recommending in writing that Ms. Moleni's employment be terminated for her violation of Delta's screening policy.

9. Delta implemented a new, mandatory employee screening policy in September 2016. Notice of that policy, along with an explanatory memorandum, was emailed to all Delta ACS employees in Salt Lake City in late September 2016. At Delta, all employees are expected to check and review their company emails.

10. The Company also posted the explanatory memorandum on employee bulletin boards and break room monitors.

11. Under the screening policy, all employees are required to present themselves for screening at the beginning of their shift if they are working in a restricted or secure/sterile area.

12. Once employees have gone through the required screening at the beginning of

2

their shift, they may come and go through the secure doors without going through screening again.

13. After a review of Ms. Moleni's conduct and her past disciplinary history, on October 14, 2017 I agreed that Ms. Moleni's employment should be terminated. As Delta does with most employees who are being terminated, Ms. Moleni would be given the option to resign, and if she refused, her employment would be terminated.

14. After Delta recommended Ms. Moleni's termination, and while she was suspended pending termination, she made a complaint to Delta's Helpline on October 18, 2017. I was assigned primary responsibility for handling her Helpline complaint.

15. Ms. Moleni asserted that her employment had been wrongfully suspended. She claimed that other employees used the same secure entry to the bag room that she used, but that she was the only employee suspended for doing so.

16. In her complaint, Ms. Moleni did not claim any discrimination, including discrimination based on her race. And she did not mention the races of the other employees who she alleged also used the secure door to the bag room. She did not engage in protected activity in any way, she was just claiming that she should not be suspended/terminated because she claimed that others used the same door.

17. I spoke with Ms. Moleni on October 20, 2017 regarding her complaint and suspension, and after listening to her allegations I informed her that she could submit additional information, including the names of the other individuals who she claimed had used the same door.

18. Ms. Moleni later submitted the names of several individuals who she claimed

3

used the secure doors to the bag room without any discipline.

19. Delta investigated Moleni's allegations by, among other things, reviewing surveillance footage and badge access of secure doors. As a result of that investigation, and by looking at the badge swipes and video surveillance footage, Delta did not find any security screening violations by any of the employees Moleni named.

20. However, a few months after Ms. Moleni's termination, another employee, Benjamin Kent, a white male, violated Delta's mandatory employee screening. This was not someone Ms. Moleni had claimed violated the security screening. Like Moleni, Delta found out about his violation when it was reported by another employee. Delta then conducted an investigation.

21. Mr. Kent's violation was the same as Ms. Moleni's – it was determined that Mr. Kent, like Petitioner, bypassed security by using his access card to enter the same secure doors in terminal 2 of the airport that Moleni used, without first submitting to the mandatory screening.

22. Although Mr. Kent had no prior discipline in his file, because of the very serious nature of such security violations, like Ms. Moleni, Delta terminated his employment for violation of the screening policy. Consistent with Delta's typical practice, Mr. Kent was given the option to resign in lieu of termination. Documents related to Mr. Kent's termination are attached hereto as Exhibit A.

23. Violation of the employee security screening policy is a very serious violation of Delta policy and is a stand-alone terminable offense. Although Ms. Moleni had significant prior discipline, and was even on Final Warning (meaning that she would be terminated for any additional policy violation), even if she had had no prior discipline like Mr. Kent, her

4

employment would still have been terminated for her violation of the employee security screening policy.

I declare under penalty of perjury that the foregoing is true and correct.

DATED this 28 day of October, 2019.

*Kelley Nabors*
Kelley Nabors

1505960

# EXHIBIT A



**Internal Memorandum**

**Date: January 29, 2018**

**To:** Josh Jessup, General Manager – Human Resources – ACS/Cargo

**From:** Kelley Nabors, Senior Manager - Human Resources - ACS/Cargo

**Subject:** Recommendation for Termination

**Employee:** Benjamin Kent, Employee # 789818, SLC/120

**Date of Employment:** June 8, 2009 (8 years 7 months)

**Current Status:** Suspended 01/23/18

**Previous Disciplinary Action:**

N/A

**Summary:**
Benjamin Kent entered a secure area of the airport on multiple occasions without submitting to the required employee screening. When asked, he stated he has been doing it for well over a year. Airport Customer Service recommends termination of Mr. Kent's employment.

**Recommendation:**
I agree with Airport Customer Service; Benjamin Kent should be asked to resign. If he refuses, he should be terminated.

**Agreement**

_____          1-29-18
General Manager – Human Resources          Date

_____          2-1-18
Managing Director – Human Resources       Date



Bill Howard
Operations Service
Manager

Delta Air Lines, Inc.
AMF Box 22003
Salt Lake City, UT 84116
T.+1 801 744 4449
M. +1 801 554 3976
bill.o.howard@delta.com

January 29, 2018

TO: Marc, Stetler - Department Manager

FROM: Bill Howard - Operations Service Manager

SUBJECT: Recommendation for Termination of Employment
Benjamin Kent, Employee's Number 00789818, RR, CSA, Dept. 120/SLC

On January 17, 2018, it was brought to our attention that Benjamin entered a secure area of the airport through terminal 2 doors 120 and 120A bypassing required employee screening. On January 17, 2018 Kent was asked if he has previously bypassed employee screening when reporting to work and he responded "yes, that he has done it for over a Year". Those concerns were followed up on and this is what was learned through our investigation:

- On January 18, 2018, we validated from both video surveillance he had entered the secure sida doors T2-120A and T2-120 of the airport without going through required employee screening process.

- January 23, 2018, Benjamin provided a statement that indicates: he was not aware employee screening had been implemented, and has come through this same door for over a year.

Benjamin failed to meet Delta's standards and expectations by bypassing required employee screening. The safety and security of our customers and employees are always Delta's top priority. Benjamin's unacceptable job performance negatively impacts our team and our customers. As a result, I am recommending her employment be terminated.

Bill Howard Operational Service Manager-SLC

cc: Kelley Nabors – Sr. HR Manager