FILED
2022 MAR 9
CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ANGELA MOLENI,<br><br>　　　　Plaintiff,<br><br>v.<br><br>DELTA AIR LINES, INC.,<br><br>　　　　Defendant. | **ORDER ADOPTING REPORT AND RECOMMENDATION**<br><br>Case No. 2:21-cv-00043<br><br>District Judge Jill N. Parrish<br><br>Magistrate Judge Daphne A. Oberg |

　　　　Before the court is Plaintiff Angela Moleni's ("Moleni") objection to Magistrate Judge Daphne A. Oberg's Report and Recommendation to grant Defendant Delta Air Lines' ("Delta") motion for summary judgment.

## BACKGROUND

　　　　Delta employed Moleni as a customer service agent. During her tenure with Delta, Moleni accumulated a number of verbal and written warnings related to her attendance and reliability. On June 15, 2017, Moleni's supervisor issued a "Final Corrective Action Notice" that cited reliability and job performance concerns. The notice stated that it would remain in her file until June 9, 2020, and that any further violations could result in her termination.

　　　　Meanwhile, in September 2016, Delta instituted a mandatory security screening process for its employees. The policy required any employee who worked in a secure area of the airport to undergo screening prior to entering the secure area, either at a TSA checkpoint or at an employee-specific checkpoint. Moleni's assignments included gate duty in the secure concourse. But in September 2017, a bag room employee notified Delta that Moleni was bypassing the mandatory employee screening by entering the concourse via the bag room behind the ticket

counter. Delta officials reviewed security tapes and badge-scan logs and determined that Moleni had bypassed the mandatory screening process on a number of occasions.

Because of the serious nature of Moleni's security violation, Delta decided to terminate Moleni. Indeed, according to a senior Delta human resources manager, the violation—even absent Moleni's troubled employment history—warranted dismissal. Delta notified Moleni of its decision and gave her the opportunity to resign in lieu of termination. Moleni emailed Delta refusing to resign, but Delta treated her email as a resignation.[1] Moleni's employment relationship with Delta ended on October 28, 2017.

Moleni filed this lawsuit pro se alleging racial discrimination against Delta. *See* ECF No. 1. Specifically, Moleni alleges that Delta investigated her and terminated her because of her Pacific Islander with Tongan heritage race[2] when it failed to do the same for similarly situated non-Tongan employees. On June 21, 2021, Delta moved for summary judgment, arguing that Moleni could not establish a prima facie case of discrimination nor evidence of pretext. *See* ECF No. 24.

On February 8, 2022, Magistrate Judge Oberg issued a Report and Recommendation that the district judge grant Delta's motion for summary judgment. *See* ECF No. 42. Judge Oberg

---

[1] Moleni complains in her objection that Delta terminated her twice. However, the record—including the exhibits attached to Moleni's own objection—demonstrate otherwise. The circumstances surrounding Moleni's termination are confusing. But ultimately, as logic would dictate, they demonstrate a single termination. On October 27, 2017, Delta informed Moleni that she could resign in lieu of termination. ECF No. 44-6. The company stated that if she did not submit a letter of resignation, it would terminate her. *Id.* Moleni emailed Delta refusing to resign. *Id.* Delta indicated that it accepted Moleni's October 28, 2017 email as an official resignation, thus terminating her employment with Delta. ECF No. 44-1; 44-2.

[2] Moleni refers to her race as "Pacific Islander with Tongan Heritage." ECF No. 1 ¶ 15. This label blurs the line between racial and national origin discrimination. But Title VII covers both forms of discrimination. *See* 42 U.S.C. § 2000e-2(a)(1). And regardless of whether the complaint labels the discrimination "racial" or "national origin," Delta was on notice of the nature of Moleni's claims.

first noted that "Moleni has no evidence she was terminated under circumstances giving rise to an inference of discrimination" because "[i]t is undisputed that Ms. Moleni repeatedly violated Delta's security screening policy, was investigated for this violation, and was terminated as a result." ECF No. 42, at 10-11. Judge Oberg found no evidence that Delta singled Moleni out for investigation because of her race nor any evidence that Delta treated a white employee accused of the same conduct differently. *Id.* at 11. Moreover, Judge Oberg found that Moleni also could not establish pretext for largely the same reasons. *Id.* at 14. Judge Oberg notified Moleni of her right to file an objection and further notified her that failure to file a timely objection to the Report and Recommendation could waive any objections to it. *Id.* at 14-15.

Moleni filed an objection to the Report and Recommendation. *See* ECF No. 44. Moleni primarily predicates her objection on the premise that Delta treated a white employee accused of violating the same security screening protocols, Benjamin Kent ("Kent"), differently than it treated Moleni during the investigation and termination process. *Id.* at 2. Specifically, Moleni complains that Delta did not suspend Kent during the investigation process whereas Delta suspended Moleni while they investigated her alleged infraction.

## LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The movant bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Once the movant has met this burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted). When applying the summary judgment standard, the court must

3

"view the evidence and make all reasonable inferences in the light most favorable to the nonmoving party." *N. Nat. Gas Co. v. Nash Oil & Gas, Inc.*, 526 F.3d 626, 629 (10th Cir. 2008). Moreover, the court must liberally construe pro se pleadings, yet it cannot assume the role of advocate for the pro se litigant. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 & n.3 (10th Cir. 1991).

## ANALYSIS

Title VII makes it unlawful for an employer "to discharge any individual . . . because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). In order to establish a prima facie case of racial discrimination, a plaintiff must show that "(1) he was a member of a protected class; (2) he was qualified and satisfactorily performing his job; and (3) he was terminated under circumstances giving rise to an inference of discrimination." *Salguero v. City of Clovis*, 366 F.3d 1168, 1175 (10th Cir. 2004). Once an employee establishes a prima facie case of employment discrimination, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for its action. *Rivera v. City & Cnty. of Denver*, 365 F.3d 912, 920 (10th Cir. 2004). The burden then shifts back to the plaintiff "to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

Moleni argues in her objection that she can establish that she was terminated under circumstances giving rise to an inference of discrimination by demonstrating that Delta treated a similarly situated white man differently than her.[3] As evidence, Moleni points to the fact that

---

[3] Regarding the other two prongs of Moleni's prima facie case—first, both parties agree that Moleni is member of a protected class. Second, Judge Oberg did not rule on whether Moleni was satisfactorily performing her job. *See* ECF No. 42, at 13 n.6. Because this court reaches the same conclusion as Judge Oberg—that Moleni fails to adduce evidence demonstrating that she was terminated under circumstances that would give rise to an inference of discrimination—it also need not reach the question of whether Moleni has produced evidence that she was satisfactorily performing her job. However, in light of the undisputed fact that Delta placed Moleni on a "Final

Delta did not suspend Kent after confronting him about bypassing the mandatory security measures, whereas Delta suspended Moleni when faced with allegations of identical misconduct. Moleni points out that Delta had two opportunities—the January 17, 2018 and January 18, 2018 meetings between Kent and his supervisors—to suspend Kent. Yet Kent appears to have continued working pending the results of Delta's investigation into his alleged misconduct. Moleni complains that Delta's leniency towards Kent, as compared with its decision to suspend her pending a similar investigation, provides evidence of racial discrimination. But Moleni adduces no evidence that her race—and not, perhaps, her longstanding reliability issues or her final warning status—was the determining factor in suspending her. Moreover, both Kent and Moleni ultimately suffered an identical adverse action—termination, or alternatively, the opportunity to resign in lieu of termination. The fact that Delta took a slightly different path as to each employee as it investigated and reached the same ultimate conclusion does not indicate racial discrimination.

And for largely similar reasons, Moleni cannot use the same evidence to establish pretext. Moleni does not dispute that she violated Delta's mandatory screening policy nor that such violation is grounds for termination. And the evidence shows that another white male employee also faced termination for identical conduct. Accordingly, Moleni has adduced no evidence that Delta's decision to terminate her resulted from pretext.

---

Corrective Action Notice" after a documented history of reliability and job performance issues, then excused an additional violation during the final warning period for failure to clock in at the beginning of a shift (conduct which constituted a fireable offense while on final warning), the court expresses serious doubt that Moleni was satisfactorily performing her job. ECF No. 26, at 8-9 (failing to dispute that while on final warning, Moleni again violated Delta policy by failing to clock in at the beginning of her shift and that Delta exercised positive discretion to give her one more chance).

## CONCLUSION

The court rules as follows:

1. Moleni's objection (ECF No. 44) is OVERRULED.

2. The Report and Recommendation (ECF No. 42) is ADOPTED IN FULL.

3. The court GRANTS summary judgment in favor of Delta.

DATED March 9, 2022.

BY THE COURT

Jill N. Parrish
United States District Court Judge